U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2011 OCT -6 PM 1:30

CLERK
BY_____PM_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

REGINA L. MOTT, )
)
   Plaintiff, )
)
v. ) Case No. 5:10-cv-165
)
MICHAEL J. ASTRUE, )
Commissioner, Social Security )
Administration, )
)
   Defendant. )

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO REVERSE AND REMAND THE DECISION OF THE COMMISSIONER
(Docs. 7, 16)

This matter comes before the court on the motion by Regina L. Mott ("Plaintiff") seeking review of the decision of Defendant, the Commissioner of Social Security ("Commissioner"). (Doc. 7.) Plaintiff seeks an order reversing the Commissioner's denial of her application for Social Security Disability Insurance benefits ("SSDI") and Supplemental Social Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act ("SSA"), and a remand of the case for calculation of benefits. The Commissioner asks that the court affirm the Commissioner's decision, pursuant to 42 U.S.C. § 405(g) of the SSA. (Doc. 16.) On August 31, 2011, oral argument was held on the pending motions.

At issue in this case is whether the Administrative Law Judge erred in finding Plaintiff's date last insured ("DLI") was December 31, 2007; in assessing the weight to be given to the opinion of Plaintiff's treating physician, Dr. Zsoldos; and in finding Plaintiff's daily activities are "robust."

Plaintiff is represented by Arthur P. Anderson, Esq. The Commissioner is represented by AUSA Nikolas P. Kerest.

For the reasons set forth below, the court GRANTS the Plaintiff's Motion to Reverse the decision of the Commissioner (Doc. 7), and DENIES the Commissioner's Motion to Affirm the Commissioner's decision (Doc. 16.)

## I. Factual and Procedural Background.

Plaintiff was forty-four years old when she filed for disability benefits on December 19, 2007. She completed nine grades of formal education and received her GED in 1981. She has had numerous jobs, including medical records clerk, housekeeper, and production worker in a factory setting. Plaintiff alleges disability[1] as of January 1, 2007.

Plaintiff's claim was denied initially and after reconsideration. She requested a hearing, which was held via videoconference before Administrative Law Judge ("ALJ") Debra Boudreau. Plaintiff and Howard Steinberg, a vocational expert ("VE"), testified at the hearing. On March 15, 2010, the ALJ found that Plaintiff was not disabled within the meaning of the SSA. The Decision Review Board ("DRB") selected the ALJ's decision for review but failed to complete the review within the allowable timeframe. The ALJ's decision thus became the final decision of the Commissioner.

## II. The ALJ's Decision.

Applying the five-step analysis employed by the Commissioner to ascertain whether a claimant is disabled under the SSA,[2] the ALJ determined at step one that

---

[1] "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

[2] The five-step analysis is conducted as follows:

> The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires him to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the

2

Plaintiff met the insured status requirements of the SSA through December 31, 2007. She next found that Plaintiff had not engaged in substantial gainful activity since January 1, 2007, the alleged onset date.

At the third step, the ALJ found that Plaintiff "has the combination of severe impairments consisting of discoid lupus, degenerative disc disease of the lumbar spine, status post right carpal tunnel syndrome, moderate recurrent major depressive disorder with generalized anxiety disorder, post-traumatic stress disorder and panic disorder without agoraphobia and daily marijuana smoking." (Administrative Record ("AR") 10.) The ALJ concluded Plaintiff's impairment constituted a medically determinable severe impairment.

Next, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments in the Listings, specifically Listings 1.02(B), 1.04, and 14.02. With regard to Plaintiff's mental impairments, the ALJ found they did not meet or medically equal the criteria in Listings 12.04 and 12.06. The ALJ found a mild restriction in Plaintiff's daily living activities and moderate difficulties in social functioning and concentration, persistence, and pace.

The ALJ went on to find that Plaintiff had the residual functional capacity ("RFC") to perform light work with numerous limitations.[3] The ALJ further found that

---

> impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).
>
> If the claimant is not presumptively disabled, the fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The fifth and final step requires the ALJ to determine whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts[v. Barnhart]*, 388 F.3d [377,] 383 [2d Cir. 2004], and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue,* 566 F.3d 303, 306 (2d Cir. 2009)[.]

*Zokaitis v. Astrue*, 2010 WL 5140576, at *5-6 (D. Vt. Oct. 28, 2010).

[3] The ALJ listed the following limitations on Plaintiff's ability to perform light work: she can lift and carry no more than 20 pounds occasionally and 10 pounds frequently; she can stand and

3

Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms of difficulty breathing; being bothered by odors and any activity; muscle aches and stiffness; and poor memory and fatigue.

The ALJ concluded the limiting effects of Plaintiff's symptoms were not credible "to the extent they are inconsistent with the above [RFC] assessment." (AR 12.) Specifically, the ALJ found that the objective record evidence did not support Plaintiff's allegations of disability, citing a November 2009 examination for hand problems showing only minimal signs of carpal tunnel syndrome, as well as January 2010 mental health counseling notes. Plaintiff is noted to have mentioned that her depression had been lifting, she had been feeling better, and she was "seeking out volunteer work in the community" as a way to prepare for returning to work. (AR 680.) The ALJ also considered subjective factors, including Plaintiff's "robust" activities of daily living that "involve her self care and care of her pet cats;" that Plaintiff was merely following up with rheumatology on an annual basis; and that Plaintiff met all of her physical therapy goals. (AR 12.) Additionally, the ALJ noted Plaintiff received only conservative modalities for treating her back and neck pain.

The ALJ gave the opinion of the state agency medical consultant, Dr. Leslie Abramson, "significant weight because it embodies nonexertional limitations consistent with the evidence of record." (AR 12, 483-90.) In contrast, the ALJ concluded the "treating source medical opinion of Dr. Frank Zsoldos [rating Plaintiff at] less than a full range of sedentary work (Exhibit 26F) cannot be given significant weight because it is not supported by clinical observations or other evidence of record." (AR 12, 671-79.)

The ALJ found that Plaintiff was capable of performing her past relevant work as a medical records clerk based on the testimony of the VE, as that occupation did not

---

walk for 6 hours in an 8 hour day and sit for 6 hours in an 8 hour day; she can frequently climb stairs and ramps but only occasionally climb ladders; she can frequently balance but only occasionally stoop, kneel, crouch, and crawl; she can remember 1-3 step tasks for over a 2-hour period in an 8 hour workday and 40 hour workweek; she can sustain brief, routine interaction with coworkers and supervisors but only occasional interaction with the general public; she can deal with routine workplace changes; and she must avoid exposure to temperature extremes, dust, and fumes.

4

involve performing tasks that would be restricted by her nonexertional limitations. The ALJ then concluded Plaintiff was disabled from January 1, 2007, through the date of the decision.

### III. Standard of Review.

In reviewing the Commissioner's decision, the court conducts a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citation omitted). The court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached," *Barbato v. Astrue*, 2010 WL 2710521, at *1 (W.D.N.Y. July 7, 2010) (internal quotation marks and citation omitted), and must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence. *Estate of Landers v. Leavitt*, 545 F.3d 98, 113 (2d Cir. 2008) (quotation marks and citation omitted).

An ALJ must set forth his or her findings with "sufficient specificity" to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation marks and citation omitted). It thus must be "more than a mere scintilla" of evidence scattered throughout the record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y., Inc. v. NLRB*, 305 U.S. 197, 229 (1938)). If supported by substantial evidence, the court "must afford the Commissioner's determination considerable deference, and may not substitute 'its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review.'" *Sanderson v. Astrue*, 2011 WL 1113856, at *2 (N.D.N.Y. Jan. 19, 2011) (quoting *Valente v. Sec'y of HHS*, 733 F.2d 1037, 1041 (2d Cir. 1984)). Accordingly, a court should "reverse an administrative determination only when it does not rest on adequate findings sustained by

evidence having 'rational probative force.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Consol. Edison Co.*, 305 U.S. at 230).

### IV. Analysis and Conclusions of Law.

Plaintiff raises three grounds for reversal and remand. She asserts the ALJ erred by (1) concluding Plaintiff's date last insured is December 31, 2007; (2) failing to give controlling weight to the opinion of Plaintiff's treating physician, Dr. Zsoldos; and (3) finding that Plaintiff's daily activities are "robust."

### A. Plaintiff's Date Last Insured.

The ALJ found that Plaintiff's DLI is December 31, 2007. Plaintiff argues this finding is erroneous, as her DLI is actually December 31, 2012, as supported by the undisputed earnings records. (AR 170-71.) Plaintiff notes that even the ALJ stated during the hearing that Plaintiff's "date last insured has been adjusted to 31 December 2012." (AR 25.) While not taking a position on whether the DLI is incorrect, the Commissioner argues any error is harmless, as it would be "irrelevant to this case where [Plaintiff] was not disabled at any time through the date of the decision in March 2010, and thus her insured status was never implicated." (Doc. 16 at 5.) Plaintiff counters that, even if the court affirms the Commissioner's determination that she is not disabled, her DLI should be corrected because she could be precluded from receiving Title II benefits in the future based upon an incorrect DLI. Alternatively, Plaintiff argues this finding would negatively impact her in the event the matter is remanded, and she is found to have been disabled at any time after December 31, 2007.

The court concludes the December 31, 2007 DLI is incorrect and should be revised on remand to reflect the proper date of December 31, 2012. Plaintiff's updated earnings records show this date based on her earning history of ten years of consecutive quarters of earning. The document the Commissioner relies on, the Disability Determination and Transmittal form, is the state agency review of Plaintiff's case when it was filed in December of 2007, and that date was accurate at that time. (AR 65.) It is no longer accurate. Given the updated earnings records and the potential for adverse

6

consequences for Plaintiff if the error is left uncorrected, remand is appropriate on this issue.

### B. Treating Physician Rule.

Plaintiff asserts the ALJ failed to adhere to the treating physician rule when she accorded "little weight" to the January 20, 2010 opinion of Plaintiff's treating physician, Dr. Zsoldos. The Commissioner responds that Dr. Zsoldos's 2010 opinion was inconsistent with other record evidence, particularly his conclusion that Plaintiff had marked limitations in mental functioning and a capacity for less-than-sedentary work, as this opinion was not supported by clinical observations or other evidence of record.

The opinion of a claimant's treating physician as to the nature and severity of an impairment is entitled to considerable deference and is given controlling weight, provided medically acceptable clinical and laboratory diagnostic techniques support it, and it is not inconsistent with other substantial evidence. *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). In addition, "[t]he treating physician rule recognizes that a treating physician's opinion should carry more weight than a nontreating physician's opinion." *Roma v. Astrue*, 2010 WL 3418166, at *4 (D. Conn. Aug. 24, 2010). The regulations recognize treating physicians "provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). As a result, the ALJ "cannot arbitrarily substitute his own judgment for competent medical opinion," *McBrayer v. Sec'y of HHS*, 712 F.2d 795, 799 (2d Cir. 1983) (citation omitted), and must provide "good reasons" before discounting a treating physician's opinion. *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998). Conversely, "[w]hen other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

When the treating physician's opinion is not given controlling weight, the regulations require the ALJ to assess the following factors: "(i) the frequency of

examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." *Schaal*, 134 F.3d at 503 (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)).

An ALJ may also consider the opinion of agency consultants in making a determination of disability, as such consultants are deemed to be qualified experts in the field of social security disability. *Montaque v. Astrue*, 2010 WL 1186515, at *8 (N.D.N.Y. Mar. 23, 2010) (internal citations omitted). The opinions of non-examining sources can "override treating sources' opinions, provided they are supported by evidence in the record." *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993).

Here, the ALJ concluded that Dr. Zsoldos's opinion was "not supported by clinical observations or other evidence of record," but she did not specify what evidence she relied on to reach that conclusion. The only support for this conclusion is the ALJ's reference to Exhibit 26F,[4] the January 2010 "Medical Source Statement of Ability to do Work-Related Activities (Mental and Physical)." (AR 671-679.) As noted by Plaintiff, the ALJ's evaluation of Dr. Zsoldos's opinions consists of one generalized sentence. Because this generalized sentence does not provide "good reasons" for rejecting Dr. Zsoldos's opinion, it cannot be affirmed on review. Nor can the court accept the Commissioner's invitation to search the record for evidence which may supply "good reasons." *See Snell*, 177 F.3d at 134 (concluding remand is appropriate where the ALJ fails to provide good reasons for not crediting the opinion of a claimant's treating physician); *Peralta v. Barnhart*, 2005 WL 1527669, at *10 (E.D.N.Y. June 22, 2005) (citing *Snell* and stating "the Commissioner's explanation of the ALJ's rationale is not a substitute for the ALJ providing good reasons in his decision for the weight given to treating physician's opinions.").

---

[4] In Exhibit 26F, Dr. Zsoldos indicates that Plaintiff's depression and lupus cause her to suffer from a depressive syndrome, experience "marked" limitations in activities of daily living, social functioning, and maintaining concentration, and endure "substantial loss of activity" in many of her performance areas. (AR 674.)

8

The court thus concludes that this matter must be remanded for a determination of the "good reasons," if any, for failing to give Dr. Zsoldos's opinion controlling weight.

### C. Plaintiff's Robust Activities.

In considering Plaintiff's credibility, the ALJ concluded that "[t]he medical evidence reflects that the claimant['s] activities of daily living are robust and involve her self care and care of her pet cats." (AR 12.) In support of this finding, the ALJ referenced an exhibit referring to conservative treatment for Plaintiff's back and neck pain. Plaintiff argues this finding is not supported by the record.[5]

While conceding at oral argument that he was not arguing that self-care and cat care are typically deemed "robust activities," the Commissioner seeks to remedy any error in the ALJ's findings by pointing out that Plaintiff reported cooking, doing laundry, washing dishes, and cleaning the toilet, which may be deemed "robust activities." The Commissioner, however, may not substitute his own rationale when the ALJ has failed to provide one. *See Snell*, 177 F.3d at 134 (explaining that a reviewing court "may not accept . . . counsel's post hoc rationalizations for agency actions.").

The ALJ's conclusion that Plaintiff's daily activities are "robust" is not supported by substantial evidence. Because it is not clear whether this error contributed to the ALJ's overall credibility determination, remand is appropriate to allow the ALJ to consider whether in the absence of "robust" activities such as self-care and cat care, the ALJ's credibility determination would remain unchanged.

### D. Scope of Remand.

Plaintiff seeks a remand solely for the purpose of calculation of benefits. In cases where there is "no apparent basis to conclude that a more complete record might support

---

[5] In support of her argument, Plaintiff notes her testimony that she cannot perform any tasks without hurting her back, neck, or arms; that she cannot lift her arms up; that she washes her hair quickly because it hurts her arms and causes her difficulty breathing when her arms are at shoulder height; that she has constant mild double vision in her right eye; that she cannot lift, push, or pull anything of weight; that she does not frequently do her own grocery shopping; that she cannot peel potatoes or open jars; and that she has difficulties lifting a gallon of milk or putting pressure on her hand. She also testified that she did not have any intention of obtaining work in the future due to increased bodily pain in the past five years, despite her previous thoughts about finding volunteer work in January of 2010.

the Commissioner's decision, remanding for a calculation of benefits may be appropriate. *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999). In contrast, where, as here "there are gaps in the administrative record or the ALJ has applied an improper standard," it is appropriate for the court to order remand for further record development of the evidence. *Id.* (internal quotation marks omitted).

In this case, after considering a more complete medical record and making additional findings, an ALJ may conclude Plaintiff is not disabled. Accordingly, an award of benefits is not warranted, and Plaintiff's claim for SSDI and SSI is hereby remanded to the Social Security Administration pursuant to "sentence four" of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.[6]

For the reasons stated above, the court hereby GRANTS Plaintiff's Motion to Reverse and Remand the Commissioner's decision (Doc. 7), and DENIES the Commissioner's Motion to Affirm the decision of the Commissioner. (Doc. 16.) SO ORDERED.

Dated at Rutland, in the District of Vermont, this 6th day of October, 2011.

Christina Reiss, Chief Judge
United States District Court

---

[6] Under sentence four of 42 U.S.C. § 405(g), the district court has the authority to reverse, modify, or affirm the decision of the Commissioner. This may include a remand of the case back to the Commissioner for further analysis and a new decision. *See generally Rosa*, 168 F.3d at 83. A sentence four remand is a final judgment. *See Melkonyan v. Sullivan*, 501 U.S. 89, 97-101 (1991); Fed. R. Civ. P. 58.